Matter of Rimler v City of New York (2019 NY Slip Op 03599)





Matter of Rimler v City of New York


2019 NY Slip Op 03599


Decided on May 8, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 8, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
RUTH C. BALKIN
LEONARD B. AUSTIN
ROBERT J. MILLER, JJ.


2017-01486
 (Index No. 506046/16)

[*1]In the Matter of Marsha Rimler, etc., et al., appellants,
v
City of New York, et al., respondents.


Lippes & Lippes, Buffalo, NY (Richard J. Lippes of counsel), for appellants.
Zachary W. Carter, Corporation Counsel, New York, NY (Claude S. Platton and Ellen Ravitch of counsel), for respondents City of New York, New York City Economic Development Corporation, New York City Department of City Wide Administrative Services, and Brooklyn Borough Board.
Sive Paget & Riesel, P.C., New York, NY (David Paget and Jonathan Kalmuss-Katz of counsel), for respondents Saint Ann's School, Our Lady of Lebanon Maronite Catholic Church, and Cadman Associates, LLC, and Venable LLP, New York, NY (Matthew T. McLaughlin and Adam Possidente of counsel), for respondent Brooklyn Public Library (one brief filed).



DECISION & ORDER
In a proceeding pursuant to CPLR article 78, the petitioners appeal from a judgment of the Supreme Court, Kings County (Dawn Jimenez-Salta, J.). The judgment, upon an order of the same court dated July 7, 2016, granting the respondents' motion to dismiss the petition and denying the petitioners' cross motion pursuant to CPLR 306-b to extend the time to serve process to the dates on which service was made, nunc pro tunc, denied the petition and dismissed the proceeding.
ORDERED that the judgment is affirmed, with one bill of costs.
The petitioners challenge a negative declaration made during an environmental review of a proposed mixed-use development project in downtown Brooklyn. The project involves the sale and redevelopment of a site at the confluence of Cadman Plaza West, Clinton Street, and Tillary Street. The site was owned by the City of New York and previously contained a two-story branch of the Brooklyn Public Library (hereinafter BPL). The project called for the demolition of the building in which the branch library was situated and the construction of a building of 36 stories, with below-ground parking, a new branch library, a small amount of retail space, and apartments.
The project underwent a review pursuant to the State Environmental Quality Review Act (hereinafter SEQRA) (see Environmental Conservation Law § 8-0101 et seq.) and the Rules of the City of New York governing City Environmental Quality Review (hereinafter CEQR) (see 62 RCNY 5-01). For purposes of the SEQRA/CEQR review, the Mayor's Office of Sustainability (hereinafter MOS) was designated as the lead agency. Following the preparation of an extensive Environmental Assessment Statement, MOS issued a negative declaration on June 12, 2015, determining that the project would not have a significant adverse impact on the environment and, [*2]therefore, that an environmental impact statement (hereinafter EIS) was not required.
On June 4, 2015, the developer of the project, Cadman Associates, LLC (hereinafter Cadman), BPL, and the New York City Department of Citywide Administrative Services applied to the New York City Planning Commission (hereinafter CPC) for approval of the project. CPC approval was required because the project involved the sale of City-owned property and was therefore subject to review under the Uniform Land Use Review Procedure (hereinafter ULURP) (see New York City Charter § 197-c[a][10]). After several public hearings by the local community board, CPC, and other entities, CPC approved the project on November 2, 2015. The City Council then held a public hearing, and it ultimately approved the project on December 16, 2015, concluding the ULURP review process.
The petitioners commenced this CPLR article 78 proceeding on April 15, 2016, by filing a petition challenging the City's determination under SEQRA to issue a negative declaration and not require an EIS. The petitioners also sought an injunction halting the project. The respondents moved to dismiss the petition on the ground that none of the respondents had been timely served with the petition. The petitioners opposed the motion and cross-moved pursuant to CPLR 306-b to extend the time to serve the petition to the dates on which the respondents had been served, nunc pro tunc. In an order dated July 7, 2016, the Supreme Court granted the respondents' motion to dismiss the petition on the ground of untimely service and denied the petitioners' cross motion to extend the time to serve to dates of service, nunc pro tunc. Alternatively, the court determined that the petition should be denied on the merits. Upon its order, the court entered a judgment denying the petition and dismissing the proceeding. The petitioners appeal from the judgment.
A CPLR "article 78 proceeding must be brought within four months after the determination to be reviewed becomes final and binding upon the petitioner'" (Matter of Best Payphones, Inc. v Deptartment of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34, quoting CPLR 217[1]). Here, this proceeding challenging the environmental review of the subject project was required to be commenced within four months of the final determination of environmental issues (see Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d 1031, 1035; Matter of Throggs Neck Resident Council v Cahill, 290 AD2d 324, 324). The final determination of environmental issues occurred upon the City Council's approval of the project under ULURP (see Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d at 1035-1036; Matter of Throggs Neck Resident Council v Cahill, 290 AD2d at 324). The City Council approved the project on December 16, 2015. Accordingly, the four-month statute of limitations began running on that date and was to expire on April 16, 2016. The petitioners filed their petition one day earlier, on April 15, 2016.
CPLR 306-b also prescribes, however, that in an action or proceeding when the applicable statute of limitations is four months or less, service shall be made not later than 15 days after the expiration date of the statute of limitations. It is undisputed that the petitioners failed to serve the respondents within 15 days after April 16, 2016, or by May 2, 2016. Instead, service on the various respondents was made between May 13, 2016, and May 23, 2016.
The petitioners' argument that the four-month statute of limitations did not begin to run until March 1, 2016, when the Brooklyn Borough Board (hereinafter BBB) approved the project, is without merit. The petitioners do not argue, and there is no evidence in the record, that the BBB's approval involved environmental review in any way (see 6 NYCRR 617.6[b][3][iii]; New York City Charter § 384[b][4]). Therefore, the BBB's approval had "no impact on the environmental decisions that aggrieve [the] petitioners" (Matter of Throggs Neck Resident Council v Cahill, 290 AD2d at 324; see Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d at 1033-1034; Matter of Jones v Amicone, 27 AD3d 465, 469; see also Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 548; Matter of Metropolitan Museum Historic Dist. Coalition v De Montebello, 20 AD3d 28, 35-36). Thus, as the Supreme Court determined, the petitioners failed to comply with CPLR 306-b.
CPLR 306-b, however, allows for the extension of the time for service "upon good [*3]cause shown or in the interest of justice," and the petitioners cross-moved to extend the time for service to the dates the respondents had actually been served, nunc pro tunc. When a party fails to attempt timely service, good cause will not exist (see Jung Hun Cho v Bovasso, 166 AD3d 868, 869; Bumpus v New York City Tr. Auth., 66 AD3d 26, 32). As the Supreme Court noted, there is no evidence that the petitioners attempted service by May 2, 2016, so they were not entitled to a good-cause extension. " A determination of whether to grant the extension in the interest of justice is generally within the discretion of the motion court'" (Bank United, FSB v Verbitsky, 167 AD3d 833, 835, quoting Siragusa v D'Esposito, 116 AD3d 837, 837). The "interest of justice standard requires a careful judicial analysis of the factual setting of the case and a balancing of the competing interests presented by the parties. . . . [A] plaintiff need not establish reasonably diligent efforts at service as a threshold matter. However, the court may consider diligence, or lack thereof, along with any other relevant factor in making its determination, including expiration of the Statute of Limitations, the meritorious nature of the cause of action, the length of delay in service, the promptness of a plaintiff's request for the extension of time, and prejudice to defendant" (Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 105-106). The Supreme Court did not improvidently exercise its discretion in declining to grant the petitioners an interest-of-justice extension for completion of service because, among other things, the petitioners failed to show sufficient merit to the proceeding.
In any event, even if we were to reach the merits, we would conclude that the proceeding was properly dismissed on the merits. Judicial review of SEQRA findings "is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 430 [internal quotation marks omitted]). "The relevant question before the court is whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 688 [internal quotation marks omitted]; see Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d at 430). As the court described in detail, the record reveals that the MOS fulfilled its obligations under SEQRA, including, among other things, evaluating the impact of the project on traffic, light, and historic, architectural, and cultural resources. We agree with the court that the proceeding lacked merit.
RIVERA, J.P., BALKIN, AUSTIN and MILLER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court