In the Matter of CHASE PARTNERS, LLC, Appellant, v INCORPORATED VILLAGE OF ROCKVILLE CENTRE, et al., Respondents. [843 NYS2d 116]—

In a proceeding pursuant to CPLR article 78, inter alia, in the nature of mandamus to compel the Planning Board of the Village of Rockville Centre to approve a site plan application, the petitioner appeals, as limited by its notice of appeal and brief, from so much of an order and judgment (one paper) of the Supreme Court, Nassau County (Alpert, J.), dated April 18, 2005, as granted that branch of the respondents' motion which was for leave to renew their prior motion to dismiss the petition pursuant to CPLR 3211 (a) (7) and 7804 (f), which was denied in an order of the same court dated December 13, 2004, vacated

the prior determination, granted the respondents' motion to dismiss the petition pursuant to CPLR 3211 (a) (7) and 7804 (f), and dismissed the proceeding.

Ordered that the order and judgment is affirmed insofar as appealed from, without costs or disbursements.

On January 8, 2003 the petitioner submitted an application to the Planning Board of the Village of Rockville Centre (hereinafter the Planning Board) for site plan approval to construct two adjacent multifamily residential buildings totaling 349 units. The subject real property covers an area of approximately 7.1 acres, is currently occupied by an unused industrial building, and is surrounded by a low-income apartment complex to the north, an office building to the east, a bus depot to the south, and a lakefront park to the west. The subject real property is approximately three blocks from a Long Island Railroad station and a King Kullen supermarket, and close to local bus service and the downtown business district.

Under the Code of the Village of Rockville Centre (hereinafter the Village Code), the property may lawfully be used for office, commercial, recreational, or multifamily residential purposes (*see* Village Code § 340-98). When the petitioner's application was submitted, the Village Code permitted a density of 50 residential units per acre. The Village Code also then contained a default provision, which provided that if the Planning Board failed to hold a hearing on a site plan application within 62 days of submission, and render a decision within 62 days of the hearing, the application would be deemed approved (*see* Village Law § 7-725-a [8]; Village Code former § 330-8 [G], repealed Nov. 29, 2004).

On March 27, 2003 an architectural design review conducted under the auspices of the Building Department of the Village of Rockville Centre resulted in a favorable report on the petitioner's site plan application, with some proposed revisions. Public hearings on the site plan application commenced before the Planning Board on October 21, 2003 and continued, for a total of nine hearings, over the course of 11 months, until September 21, 2004. On August 27, 2004, after the seventh hearing on the site plan application, the petitioner Chase Partners, LLC (hereinafter Chase) sent a letter to the Planning Board demanding approval of the site plan by operation of law, pursuant to the default provision of the Village Code. The Planning Board did not accede to that demand.

On April 29, 2003 the Planning Board, as lead agency under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), issued a "positive declaration," indicating

that preparation and circulation of an environmental impact statement was required. In June 2003 Chase submitted a draft environmental impact statement (hereinafter the DEIS) to the Planning Board, and on July 15, 2003 the Planning Board issued a notice of completion with respect to the DEIS.

On August 12, 2003 the Planning Board conducted its first public hearing to review the DEIS, and on September 16, 2003 the Planning Board conducted the second, and final, public hearing on the DEIS. On January 5, 2004 the Nassau County Planning Commission (hereinafter the NCPC) submitted comments on the DEIS, and in February 2004 Chase submitted a final environmental impact statement (hereinafter the FEIS) to the Planning Board. On July 22, 2004, in response to numerous public and agency comments on the FEIS, Chase submitted a revised FEIS. On September 7, 2004 the Planning Board held a final hearing on the environmental impact statement, and adopted a notice of completion for the FEIS.

Also on September 7, 2004 Chase commenced the instant CPLR article 78 proceeding seeking, inter alia, default approval pursuant to Village Law § 7-725-a (8) and Village Code former § 330-8 (G). After conducting the ninth, and final, hearing on the site plan application on September 21, 2004, the Planning Board moved, on September 23, 2004 to dismiss the petition, pursuant to CPLR 3211 (a) (7) and 7804 (f), on the ground that the 62-day default period could not begin to run until the Planning Board had adopted a statement of findings pursuant to SEQRA, and the NCPC had reviewed, and passed upon, the application. On October 6, 2004 the Planning Board adopted a SEQRA statement of findings (hereinafter the SEQRA findings statement).

On November 4, 2004 the NCPC approved the site plan as originally submitted and on November 16, 2004 the Planning Board approved the site plan, with modifications, thus permitting a reduced scale, 230-unit alternative.

On December 16, 2004 the Supreme Court denied the motion of the Incorporated Village of Rockville Centre and the Planning Board (hereinafter the respondents) to dismiss the petition pursuant to CPLR 3211 (a) (7) and 7804 (f), finding that Chase had stated a cause of action for default approval pursuant to Village Law § 7-725-a (8) and Village Code former § 330-8 (G). On January 3, 2005 the respondents moved, inter alia, for leave to renew their motion to dismiss on the ground that the default approval provision contained in the Village Code had been repealed before the Supreme Court issued its December 16, 2004 order, and therefore the court had incorrectly found that the pe-

tition stated a cause of action for default approval. The respondents also argued that, in any event, the Planning Board's determination to approve the site plan with modifications was timely because the determination was rendered within 62 days of the last hearing, held on September 21, 2004. In an order dated April 18, 2005, the Supreme Court granted that branch of the respondents' motion which was for leave to renew the motion to dismiss the petition, granted the motion to dismiss the petition, and dismissed the proceeding. We affirm the order insofar as appealed from.

Notwithstanding the applicability of the default provision, the Planning Board's determination of the site plan application did not trigger an approval by default in any event because the determination was rendered within 62 days of the completion of the SEQRA review process. SEQRA is intended to minimize to the greatest degree possible the adverse environmental consequences of government actions (*see Matter of Sun Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d 367, 369 [1983]), while Village Law § 7-725-a (8), along with Village Code former § 330-8 (G), are intended to "limit the depredations of dilatory planning boards" (*Matter of Sun Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d at 375). The facts of the instant case thus bring the environmental review provisions of SEQRA and the default provisions of the Village Law and the Village Code into apparent conflict, because the former frequently requires an extended review period in order to ensure that environmental values are properly considered, while the latter requires an application to be reviewed and determined in as little as 124 days.

"[A]pparently conflicting statutory provisions should be harmonized in a manner that preserves the essential purposes of both" (*Matter of Sun Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d at 369; ECL 8-0109 [8]; 6 NYCRR 617.1 [c]). However, where the purposes of a statute and local ordinance come into conflict with SEQRA, as they do here, SEQRA must prevail. As we have observed, "[w]e have no difficulty in according priority to SEQRA because the legislative declaration of purpose in that statute makes it obvious that protection of 'the environment for the use and enjoyment of this and all future generations' (ECL 8-0103 [8]) far overshadows the rights of developers to obtain prompt action on their proposals" (*Matter of Sun Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d at 375-376; *see* Village Law § 7-725-a [10] [requiring planning boards to comply with SEQRA]).

This Court has previously held that a subdivision plat application is deemed complete for purposes of triggering a default

approval period upon the lead agency's issuance of a notice of completion for a DEIS (*see Matter of Sun Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d at 372). However, even though an application for a land-use approval may be deemed complete at that point, a lead agency's SEQRA review obligations are not considered complete until it issues a SEQRA findings statement (*see Matter of Jones v Amicone,* 27 AD3d 465, 467 [2006], citing *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 78 NY2d 608 [1991]). The SEQRA findings statement must, inter alia, "certify that consistent with social, economic and other essential considerations from among the reasonable alternatives available, the action is one that avoids or minimizes adverse environmental impacts to the maximum extent practicable . . . by incorporating as conditions to the decision those mitigative measures that were identified as practicable [in the final EIS]" (6 NYCRR 617.11 [d] [5]). And, "[p]rior to the lead agency's decision on an action that has been the subject of a final EIS, it shall . . . consider the final EIS *before* issuing its written findings statement" (6 NYCRR 617.11 [a] [emphasis added]; *see Matter of Town of Henrietta v Department of Envtl. Conservation of State of N.Y.,* 76 AD2d 215, 223 [1980] ["an agency in approving an action must make a written finding that it has imposed whatever [reasonable] conditions are necessary to minimize or avoid all adverse environmental impacts revealed in the EIS"]). Therefore, the issuance of a SEQRA findings statement is necessary for the Planning Board to establish its full compliance with SEQRA, and to justify the imposition of any reasonable conditions on or modifications to the site plan. Since the default provision at bar provides for two separate default periods—62 days from completion of the application to the public hearings, and another 62 days from the public hearings to the final determination—we hold that, where an action has been the subject of a FEIS, the latter period does not begin to run until the lead agency has issued its SEQRA findings statement.

In the instant case, the Planning Board issued its SEQRA findings statement on October 6, 2004 and rendered its decision on the site plan application less than 62 days later, on November 16, 2004. Therefore, the Planning Board's determination of the site plan application was timely in this regard, and, upon renewal, the Supreme Court properly granted the Planning Board's motion to dismiss the petition for failure to state a cause of action. Schmidt, J.P., Dillon, Angiolillo and McCarthy, JJ., concur.