# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 89
In the Matter of Bowers
Development, LLC et al.,
      Respondents,
    v.
Oneida County Industrial
Development Agency et al.,
      Appellants.

Paul J. Goldman, for appellants.
Michael A. Fogel, for respondents.
Iroquois Healthcare Association, Inc., County of Oneida, New York State Economic
Development Council, Inc., amici curiae.

MEMORANDUM:

The order of the Appellate Division should be reversed, with costs, the matter

remitted to the Appellate Division for consideration of issues raised but not determined by

that Court, and the certified question answered in the negative.

- 1 -

Respondent Oneida County Industrial Development Agency (OCIDA) exercised its statutory eminent domain powers to condemn a parcel of property owned by petitioner Rome Plumbing & Heating Supply Co., Inc., which was the subject of a contract of sale to petitioner Bowers Development, LLC.  Respondent Central Utica Building, LLC (CUB) planned to build a medical office building on an adjoining property and requested that OCIDA exercise its authority to take the property so that CUB could build a parking facility that would serve the medical office building during the day, and the public during off-hours.  The medical office building itself would be used predominantly to house private, rent-paying doctors' offices and "other commercial and/or retail tenants to provide complementary services."  The remaining portion was to be used as an ambulatory surgery center, also as a paying tenant.  OCIDA determined it had the authority to take the property because "the surface parking to be constructed on the . . . [p]roperty is a commercial use within OCIDA's statutory authority."

In an EDPL article 2 proceeding for review of the condemnor's section 204 determination, "[t]he scope of review is very limited—the Appellate Division must 'either confirm or reject the condemnor's determinations and findings,' and its review is confined to whether (1) the proceeding was constitutionally sound; (2) the condemnor had the requisite authority; (3) its determination complied with SEQRA and EDPL article 2; and (4) the acquisition will serve a public use" (*Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540, 546 [2006], quoting EDPL 207 [C]).  "If an adequate basis for a determination is shown 'and the objector cannot show that the determination was "without foundation," the agency's determination should be confirmed' " (*Matter of*

*Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 720 [1989], quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 418 [1986]; *see Long Is. R.R. Co. v Long Is. Light. Co.*, 103 AD2d 156, 168 [2d Dept 1984], *affd* 64 NY2d 1088 [1985]).

General Municipal Law § 858 (4) grants industrial development agencies the power to "acquire by purchase, grant, lease, gift, pursuant to the provisions of the [EDPL], or otherwise and to use, real property or rights or easements therein necessary for its corporate purposes." "The purposes of [an industrial development] agency are to promote, develop, encourage[,] and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping[,] and furnishing industrial, manufacturing, warehousing, commercial, research, renewable energy[,] and recreation facilities" (General Municipal Law § 858). The question here is whether OCIDA appropriately determined that taking the property was necessary for a "commercial" purpose.

As a general matter, a parking facility used by the customers of a profit-making business plainly has a "commercial" purpose. Petitioners nevertheless argue, and the Appellate Division majority held, that the parking facility was not "commercial" because it was for "hospital" or "health-related facility" purposes (*see* 211 AD3d 1495, 1496 [2022]; *cf.* 1981 Ops Atty Gen 55; 1980 Ops Atty Gen 139). However, the proposed use of the property as a parking facility was not for such purposes. The proposed parking facility functioned simply to satisfy the need for parking created by the medical office building and provide public parking at night. The proposed use did not serve any healthcare-related function. Moreover, though some paying tenants of the medical office building provided healthcare services, the building itself was an office building with space

leased out to paying tenants.  Even assuming some of its paying tenants could qualify as "hospitals" or "health-related facilities," this would not negate the commercial nature of the office building as a whole (*see* 211 AD3d at 1503 [Curran, J., dissenting]).  OCIDA therefore had a rational basis for concluding that the use of the property was for a "commercial" purpose (*see Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235, 244, 257-259 [2010]; *see also Matter of Goldstein v New York State Urban Dev. Corp.*, 13 NY3d 511, 526 [2009], citing *Kaskel v Impellitteri*, 306 NY 73, 78 [1953]), and its determination was not "without foundation" (*see Grand Lafayette Props. LLC*, 6 NY3d at 546).

Given that the Appellate Division did not reach petitioners' other arguments, we remit to that Court to consider those arguments in the first instance (*see J.P. Morgan Sec. Inc. v Vigilant Ins. Co.*, 37 NY3d 552, 569 [2021]; *Schiavone v City of New York*, 92 NY2d 308, 317 [1998]).

Order reversed, with costs, matter remitted to the Appellate Division, Fourth Department, for consideration of issues raised but not determined by that Court and certified question answered in the negative, in a memorandum. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro, Troutman and Halligan concur.

Decided December 14, 2023